Hold on just a minute, let's get everybody up here. Okay, Mr. Sheps, you may proceed. Thank you, Your Honor, Counsel. My name is Gary Sheps, and I'm here on behalf of Petfinders, L.L.C., and myself in these two consolidated appeals. And may it please the Court, I'd like to proceed with the Petfinders appeal first. A dispositive issue in this appeal has been authoritatively decided by this Honorable Court very recently in the case in the matter of TMT Procurement v. Vantage Drilling Company at 764 Fed 3rd 512, and that was handed down in October of 2014. And in TMT Procurement, there's several of the exact same legal issues that are before the appeal in the Petfinders case today. And that makes TMT directly on point. Okay, why don't you just tell us why this case is not moot because of, what is it, 36M? Under 363M, Your Honor? Yeah, 363M. It's not moot because for there to be statutory mootness under 363M, a purchaser must not have notice of an adverse claim to the asset. So in other words, if a purchaser knows of an adverse claim to an asset before they purchase it, there's no statutory mootness, and the sale can be reviewed by an Article III court. Was that argument raised in the bankruptcy court? I believe it was, yes. Well, I'm told that one of the briefs says it was not. So can you tell me where it was raised? Not right this second, Your Honor, but if I may submit a letter brief after war. You need to know that. Was it or was it not raised in the bankruptcy court? You were there, right? I was there. Okay, and you know whether you raised it or not. Don't play around. Your Honor, I'm not playing. It was over four years ago. No, but it was charged in the briefs against you, I mean the briefs on the other side, that you did not raise it. Now, you are on notice then to look in to see whether you did raise it. Did you or did you not raise it? Your Honor, I can't answer the question. Were you not concerned enough about it when they raised it? It says this is not an argument you can make to even look into it. Go back to the records to try to determine whether that was true. I'm sorry, Your Honor, I just can't answer the question. Well, you've got to admit that's almost inexcusable, haven't you? It would be, but if I can submit a letter brief and I can go through the record and determine whether I raised it in the bankruptcy court or not. Would that be okay, Your Honor? Sure. It doesn't help your credibility, though, not to know the answer to a question like that. But I did raise it in the district court. Okay. And, um . . . Go ahead. I didn't mean to . . . in the bankruptcy court where they received notice of Pet Finders LLC adverse claim to the asset PetFinders.com. And so 363M . . . Okay, well, tell us about that then. Tell us about the notice that the purchaser of this asset had that bars the application of 363M. We filed an objections to the sale of PetFinders.com to Discovery Communications. And that was taken up at a hearing in November of 2011. And the counsel for Discovery Communications made an appearance at the hearing where the objections to the sale were argued. And that's what's at tab one in our notebook. And what were those objections? I mean, how did that spoil the good faith of the purchaser? The objection was that the bankruptcy court didn't have subject matter jurisdiction over PetFinders.com. Okay. And because it didn't have subject matter jurisdiction, it couldn't exercise authority to authorize a sale of that asset to Discovery. Okay, and why didn't it have jurisdiction? Because Andova didn't own PetFinders.com at the institution of the bankruptcy case. Did the bankruptcy court address that issue, an objection that you raised? Yes, they overruled the objection. All right. Then, so the notice that the purchaser had was that you had no valid legal claim to it. I mean, how does that notice that there is a claim to it if the bankruptcy court overruled it and it's not been changed since? Is that before us? Is that what we have to decide?  Yes, it is, Your Honor. That's what we have to decide. And if we decide against you on that point, then that clears the right for the validity of the sale, which then under 363M, moots the appeal. That would moot the appeal. All right. But I believe that this has been decided in the TMT procurement case, which is just a few months old opinion, and we believe that Discovery had notice of the adverse claim. Just because the bankruptcy court overruled the challenge doesn't mean that it was a valid not objection. I agree. I mean, you still have assumed, aside from the point that we just discussed, that you have the right to raise that on appeal. I mean, whether the district court's ruling was correct. But then you've said, if we said the district court's ruling is correct, then 363M applies and the appeal is moot. I believe that would be correct. See, I'm not sure you don't have to apply for a stay and get a stay, even if you think the court didn't have jurisdiction to order the sale. Well, the bankruptcy court waived the automatic 14-day stay. Well, but, I mean, you can go up higher and try to get a stay somewhere else. We did. This honorable court entered a stay. Well, you were denied the stay. I mean, that's ‑‑ No, they entered a stay. But it vacated. Eventually it was vacated, yes. Eventually it was vacated. And we did try to get a stay. But that gets to the point, one of the other points, as to the constitutionality of 363M itself. It may not be good law, because if an asset is sold and it's not stayed, that vests the judicial power of the United States solely in the Article I bankruptcy court, Judge. But that's before us, though. That is before you. If, assuming all the ‑‑ assuming that your objection is viable, then that's before us. Yes, Your Honor. Yes, it is. Okay. Yes. And ‑‑ What did this case, the TNT, the case you're citing, what did it decide that's in your favor? It decided that 363M did not apply because the debtors in that case had notice of an adverse claim to the property that was deposited in Custodial Allegiance, about $40 million. And because they had notice of the claim, then this honorable court ruled that 363M didn't apply and that then the court could decide whether there was subject matter jurisdiction at all over the assets in Custodial Allegiance. And this court ruled that the district court and the bankruptcy court did not have subject matter jurisdiction and vacated the bankruptcy court order in an opinion authored by Judge Higginbotham. And that's ‑‑ those are the exact same issues that we've got today is that we're arguing that there's no statutory mootness because Discovery had notice of an adverse claim to PetFinders.com. And therefore, this court can determine whether the bankruptcy court had subject matter jurisdiction over the asset and could validly authorize a sale of the asset to Discovery. And we believe that this court can reach that, make that decision. And also, we've raised the issue of whether 363M is constitutional because under certain circumstances, it vests the judicial power of the United States in an Article I judge. And under the Stern v. Marshall case ‑‑ 363M would appear to do the opposite. It basically forecloses the contest of a sale when made to a good faith purchaser with notice. And if it forecloses the review of the sale ‑‑ In other words, the law forecloses the appeal to any court. I mean, that's not ‑‑ Article III courts can review, but here you've got a law that says here's an Article I court can determine state law property rights with no review. So we're challenging that as ‑‑ I understand. As unconstitutional. Stern raises his head every time you open the door, but I don't mean it. And essentially, if we go back to the TMT holding really quickly, TMT was clear where an asset was shown by the record not to be an asset of the bankruptcy estate that this court on appeal can reverse that order of sale. Okay. Let's talk about your situation. And in my situation, Your Honor, because the receivership order, the bankruptcy court felt ‑‑ Why isn't that moot? I mean, apparently, I mean, you got everything you wanted on your appeal to the district court, didn't you? I mean, it went back down, and any contempt proceeding against you was nullified. No. No? Not exactly. Okay. There was no contempt order entered against me. Right. There was a bar order. A bar order. That barred me from appealing and from appearing in the bankruptcy court. That's been vacated. I'm sorry? You don't think ‑‑ I thought that was vacated. No. It's not been vacated, and it's not been vacated because the bankruptcy court lacks jurisdiction to vacate it because it's on appeal. That's the problem that we've got with it. Okay. And now we've got Mr. Barron waving the bar order around, saying, well, Sheps has been sanctioned by the bankruptcy court. I don't have to pay him. Look at how bad he was in the bankruptcy court. And so I'm asking this court to either vacate that order. Help you out a little bit. Okay. Help me out a little bit and either vacate the order or send it back to the bankruptcy court with instructions to vacate the order. One of the two. And that's the problem. It's a stain on my record. The issue underlying the entry of the order has been mooted by the Netsphere One opinion, but the order itself is still out there. And even though Judge Ferguson ‑‑ Well, is it an administrative matter that needs to be taken care of? Is that right? Yes. Because Judge Ferguson administratively closed the appeal of that order without ruling under 8013, whether he didn't affirm it, modify it, or reverse it with instructions. He closed the case, which is not one of the permitted things to do under 8013 when it was still a valid statute. So that's the problem with it. But Judge Jernigan, the bankruptcy judge, did this go back to when you were before Judge Jernigan at some point? Yes. I was before Judge Jernigan on contempt proceedings because she thought I was in contempt of the receivership order by filing appeals from her order in a couple of cases. But that's resolved. That's resolved. I read your exchange with her, and I hope you treat her with a little more respect in the future. I treat every judge with respect, Your Honor. Well, I read that transcript, and I won't go too far with that because it's just a bare transcript, and it doesn't have what really happened in the courtroom fully there. But that exchange with her, I thought, was untoward. It's a word of caution to you. You've done a fine job here, but that, to me, as a lawyer and a judge, it's something that you should be attentive to. I respect the passion of the lawyers, but you always got to stay within the constraints of it. You salute the uniform. You don't have to. That's the technique. Whatever you may think of the judge, it's the court as an institution. Salute the rule. Well, I understand, Your Honor, and I apologize for if there's any— You need to apologize to her, not to me. Because there's no disrespect meant at all. Thank you very much, Your Honor. Yes, sir. Thank you, Mr. Chess. And I believe that completes the arguments that we have. No, no, no. Wait a minute. It's not over with. It's not moot, is it? What are you going to say? Have you got anything to say now? Your Honor, I'm here as counsel for the trustee in the London bankruptcy case about pet finders, the bar order, and also a case called servers. There are three appeals before this court that are cases 13-10120, 13-10121, and 13-10122. We didn't talk about servers, did we? Not yet. I believe that they are abandoning their appeal and are agreeing to— He didn't say anything about servers. It's one of the three appeals before us today. He didn't say anything about it in his argument. Maybe one or the other. I was not on the servers case. That's why I'm sitting here, Your Honor. We did not file a response to the motion to dismiss on the jurisdiction of Harris. I don't know why the court— Speak to the mic. I don't know why the court entered an order— Identify yourself for the record. I'm sorry. Leonard Simon, S-I-M-O-N, on behalf of Jeffrey Barron. Prior counsel had filed a brief in the matter, and then Mr. Urbanik on May 8th filed his responsive brief. He also filed a motion to dismiss based on jurisdictional grounds. I substituted in his counsel on June 3rd—I believe June 4th— Are you waiving an oral argument, or is the case—are you— No, I'm about getting ready to tell the court. I asked Mr. Urbanik for two weeks to review the motion to dismiss to see if I wanted to oppose it. He granted me that request. I did not oppose the motion to dismiss. I decided not to oppose the motion to dismiss. A month later, this court entered an order carrying the motion to dismiss along with the case. I don't know why that happened, because there was no opposition to the motion to dismiss. I just wanted to let the court know, out of respect to the court here today, that we had made a decision not to proceed forward on the motion to dismiss. We thought that the case was going to be dismissed. Quite frankly, when— Did you write a letter to the clerk saying you had no opposition to the motion? I did not write. But I did—my recollection is that I was in conversations with counsel. Okay, but anyway, the point is that the appeal has been abandoned. Correct, Your Honor. Okay, that's all I need to know. Thank you. May I withdraw? You may indeed. Thank you. May it please the Court, it's Raymond J. Urbanik from Munch, Hart, Poffitt, Harr. I'm Counsel for Daniel Sherman, the Chapter 11 trustee of Ondova Limited Company, which is a Chapter 11 case pending before Judge Stacy Jernigan in Dallas, Texas. Your Honor, this—I'm going to start with pet finders. The appeal relates to an order entered on November— Okay. Okay, go ahead. Go ahead. I'm sorry. Okay, I'm sorry. Go ahead. Entered on November 14, 2011, where Judge Jernigan did approve the trustee's motion to sell the domain name PetFinders.com. After the judge entered the order, there were two separate appeals to this Court to stay the order, but both orders were later vacated. And the sale closed in December 2011 to a company called Discovery Communications, so there has been a consummation of the sale of the internet domain name. By way of very brief background, Ondova filed its bankruptcy July 27, 2009. Almost immediately, the Ondova trustee received communications from Discovery Communications that PetFinders.com was a trademark infringing name. Finally, in early 2011, they insisted that the name be transferred, and we filed a motion to convey the name to Discovery Channel for a convenience fee of $25,000. We filed a motion to approve the conveyance to Discovery Communications, I should say. And on November 14, 2011, Judge Jernigan entered an order, and her findings were that the name was clearly property of the estate. One entity claiming an interest in the name PetFinders LLC offered no evidence whatsoever to support its position, that the sale was negotiated in good faith and in arm's length, and that Discovery Communications was entitled to the protections of Section 363M of the Bankruptcy Code. The judge authorized the immediate sale of the domain name and granted a waiver of the estate under Rule 6004H. After Judge Jernigan entered that order, there were two attempts by Nova Point and Quantech to obtain estate. And I could go through the numbers. I have the numbers from this court. There was one order dismissing a motion to stay, and then a final order vacating the estate issued by this court on December 2, 2011, document 00511684035. So there was a whole sequence of pleadings here to stay the sale of the domain name, and actually two orders were entered saying no, we're not staying the sale of the domain name. So the trustee did consummate the sale of that domain name in December 2011. The appellants filed an appeal with Judge Will Ferguson at 12CV-387. Well, now, more specifically, what do you say about the argument that Counsel Oppsitt is making that the appeal here is valid because he took the sale was made with notice of an adverse claim against the domain? Your Honor, I believe – Judge Daly, I believe that's incorrect because TMT Procurement was a very, very different case factually. In TMT Procurement – Well, what happened here? What happened? Here we had just a party that claimed an interest because it was trademark infringing, and we had a full-blown hearing in front of the bankruptcy court. The court found Ondoba owned it. The court found that Discovery Communications had a trademark claim to it and was a good-faith purchaser. There was no allegations of collusion, bad faith, impropriety. This was a third party unaffiliated to Ondoba. But is that ruling of the bankruptcy court properly before us on appeal to decide? Yes. The district court affirmed the bankruptcy court in a ruling, and in the district court ruling, the district court cited a whole laundry list of cases from this court affirming the 363M issue, that there is a mootness issue. The court doesn't have jurisdiction. Once you have a sale that closes to a good-faith buyer, then there's no collusion. I believe Judge Ferguson – But good faith is nonetheless litigable. That's correct. Judge Jernigan found good faith on the part of Discovery Communications. Judge Royal Ferguson – So that issue before us today is the good-faith issue? I believe he – well, there's two issues I think Mr. Schatz is raising. One is Stern v. Marshall, and one is that TMT procurement case, which has totally different facts from our case. Let me say TMT procurement involves something totally different. You had two parties prior to a bankruptcy where some stock was pledged. Vantage, an offshore energy company, offshore drilling company, pledged some stock to Mr. Su, and then later said, oh, I was defrauded. So there was state court litigation over this pledge of stock. Later a bankruptcy case occurs, and that stock somehow becomes collateral of the estate, and some dip lenders get a lien on it. And so you had a pre-bankruptcy claim of fraud and bad faith between Vantage and Mr. Su, and then when the bankruptcy case happened of TMT procurement, the bankruptcy judge, for whatever reason, gave liens on that stock, even though there was sort of a challenged title. Here, Judge Jernigan just thought we owned a domain name. And the cases from this court that are so strong about – and so there was no good-faith argument made in the lower court that I recall, no good-faith argument about discovery communications. If anything, they had the upper hand because they were claiming trademark infringement under another federal statute. So Judge Jernigan found no bad faith. It was good faith, arm's length, and approved it and said they were a good-faith purchaser and approved the 363M protections. What Judge Royal did, Judge Royal Ferguson did, was he affirmed her. He cited the three cases that are commonly cited to this court in the matter of the watch limited from 2009, 257, Fed Appendix 748, another Fifth Circuit case, N. Ray Gilchrist, 891, F. 2nd, 559 from 1990, and a very, very recent case with two of the judges, N. Ray O'Dwyer. What about the argument that this was not properly preserved because the objection was not made before the bankruptcy judge? I don't believe it was. So I think that argument fails. You say you don't believe it was. Do you know it wasn't? I don't – I would say – Is it in the record? If it was made, it was frivolous because this was a company that clearly had a trademark on the name Pet Fighters. So I don't – Well, if the – Judge Jernigan found they had no legal basis to make – Well, now, you're backing off of what you apparently represented, that the objection was not made, that it was not preserved. Now you're saying, well, I mean, even if the objection was made, it was frivolous. Well, that doesn't have anything to do with the point I'm interested in, and that's whether it's preserved for our consideration. You're trying to confuse concepts. One is, oh, we're making a claim to this name, and that puts everyone on notice. Well, the court found that the claim to the name was not colorable. Just telling – coming into court and saying, oh, we have a claim to that name, I don't think that creates some knowledge that can be imputed to bad faith. And, in fact, there's a solicitor's general letter in the file where they came up with the same argument, saying, one, 363M isn't a violation of the U.S. Constitution, and also you've got to have a colorable claim before you can say, oh, they're bad faith people. And, you know, that Vantage case with TMC procurement, totally different. There was pre-bankruptcy litigation that the grant of the pledge of stock was fraudulent. Here we just owned a domain name at the beginning of the case. We conveyed it to a party for consideration that had nothing to do with us. Judge Juergen's order was affirmed by the district court. Yes, sir. And by what standard do we review that finding of good faith? Clearly wrongness. And you could look at her record, and even the U.S. Solicitor General's letter. What's our standard review of that? Of Judge Juergen, I would say clearly erroneous of her findings, I believe. Well, if it wasn't raised, it wouldn't be – it wouldn't even be that high a standard, would it? I think it's a waived argument, and they weren't able to get a state with this court on two occasions. They couldn't take any steps to – they didn't do anything in the lower court to stop the sale. The constitutional challenge was made by these folks on January 28, 2014. The Solicitor General responded June 12, 2014, and the U.S. Solicitor General supported the ruling of the lower court and Judge Royal Ferguson. So in this case, Your Honor, I'm going to speak to Stern v. Marshall as well. Stern v. Marshall involves state court claims that parties – What exactly did Judge Juergen rule? I'm sorry. What exactly did Judge Juergen rule when you say she approved the sale? She ruled name clearly property of the estate, the name PetFinders.com, after evidentiary hearing, and the one entity making a claim to the name PetFinders LLC, which was an affiliate of NovoPoint, offered no evidence whatsoever to support its position. That's Judge Juergen's order. And nothing they could do with your court or Judge Ferguson was able to cause the state of the issue to stop the sale and the closing. And so that's why we think the 363M provisions kick in. Did she make an explicit finding with regard to good faith? Yes, she did. Although it wasn't argued, huh? In the meantime, Judge, one thing I'll mention about Stern v. Marshall is that property of the estate is a federal law issue. It's Section 541 of the Bankruptcy Code. The Bankruptcy Code, federal law, governs what's an asset of the estate. It's not the state courts in Dallas County. It's U.S. bankruptcy law, federal law. I'm not talking about the Stern issue. I'm talking about the question of what did she rule on with regard to the—I'm hearing that she ruled on good faith. I'm also hearing that it wasn't argued to her. I have her November 14th order, so Judge, just let me—paragraph F of Judge Juergen's order. The court also heard convincing evidence that the proposed sale was negotiated in good faith and at arm's length, and that Discovery is a third-party purchaser with no affiliations with the debtor, the estate, or the trustee, and accordingly Discovery is entitled to the protections afforded to it as a good faith purchaser under Section 363M of the Bankruptcy Code. So what you're saying is that the claim of Lynn or a claim against the title of the domain that Mr. Sheps was making, that is, that someone else had a claim on it, was not raised in the Bankruptcy Code. She didn't address it there in what you read. I'll read the paragraph above it. The court heard substantial evidence establishing that the domain name is clearly a property of the estate. One party asserting that the domain name was its property, PetFinders LLC, offered no evidence whatsoever to support its position. The court further heard convincing evidence that Discovery holds numerous trademark registrations on the word PetFinder and that any use or sale by the trustee of the domain name could lead to claims by Discovery of trademark infringement. Accordingly, the domain name is property of the estate, and the sale of the domain name for $25,000 is an exercise of the trustee's sound business judgment, and it's in the estate's best interest under the circumstances. But the argument that Mr. Sheps would have had to make is that that evidence constituted a blemish on the title that tarnished good faith. Well, it wasn't comparable. He was not able to convince a lower court judge after a full evidentiary hearing that they had any claim. But he could still raise it later, I mean, I guess. He could raise it later, but I think he wasn't— Although the evidence was there, he didn't object to that as a basis for the sale. Apparently, that's what is being said here. I would say they had plenty of opportunities to kind of whatever the relief was, seek reconsideration, obtain a state from Judge Ferguson, effectuate a state with this court, which it tried on multiple occasions, and— Regardless, we would have to find that that founding was clearly erroneous. Yes. Yes, Your Honor. And as I said earlier, the sale closed. In our responsive brief we filed with this court, Exhibit 9 is our settlement agreement. Exhibit 10 is our wire transfer payment from Discovery Communications. And just like Judge Ferguson issued or ruled, we think the matter of the Roche case, the In reo Gilchrist case, and the very recent In reo Dwyer case provides 363M protections for the sale. Otherwise, you'd have total chaos in the bankruptcy courts if somebody coming in making a frivolous claim was able to delay a sale or cause litigation over sale for years. In retrospect, we may be charged Discovery Communications much too little to give them the remaining, considering what we've had to deal with the last few years. I would like to—So, Your Honor, we would ask that the court affirm the ruling of Bankruptcy Court and Judge Ferguson. I know I spoke fast, so if you have any questions on pet finders, feel free to ask. But I would like to turn to the bar order on servers, if that's okay. Okay. We— Services is not in here. You don't have to talk about it. They are not—But there were two orders. By the way, there's two appeals on servers. There's a 2011 appeal and a 2013 appeal because in 2011 we didn't get the name sold. In 2013 we did get the name sold. So there is a second appeal on servers. So whatever ruling this court issues to—in connection with this appeal being administratively closed or dismissed, I just want to make sure that the order does cover the 2013 appeal and the 2011 appeal. When Judge Lindsay got that 2013 appeal, he issued an order— Wait a minute. We have a notice of appeal? We have two notices of appeal or what? You have one. Judge Lindsay has one. And what he did was he administratively stayed his appeal. What can I do for Judge—the appeal that's before Judge Lindsay? He rules that the Fifth Circuit's decision is going to be outcome determinative. If the Fifth Circuit denies the first appeal, I'm going to use that ruling to deny the second appeal. It's not before us. I understand. I'm just providing it for clarification. It's confusing not clarifying. Everything about the case can be— Okay. I agree with that. With respect to the Gary Sheff's bar order, it's moved. The receivership was eventually lifted. I believe Mr. Sheff's no longer represents Mr. Barron. There's a dispute about who represents Noble Point and Quantek, which is in the state court in Collin County, Texas. My suggestion is remand to Judge Jernigan for vacating the order. And whoever ends up winning that— Do you have anything to say about the order that's pending against Mr. Sheff's? Do you agree with—you don't have any disagreement with what he said? It's moved. It's moved. There's a dispute over who represents Noble Point. But, I mean, administratively it has not been resolved. Okay. It's a moot order, so it could be either remanded back to Judge Jernigan or however this court wants to handle it. Okay. Thank you. Yes, sir. Thank you. Mr. Sheff, you've saved a little time for rebuttal. Thank you very much, Your Honor. So, on that last point, Mr. Sheff, what do you want us to do to clarify this record about the bar order? We'd like either this honorable court to vacate the bar order or to send it back to the bankruptcy court or the district court with instructions to vacate the bar order.  Thank you, Your Honor. And that the bankruptcy estate owned PetFinders.com, the assertion by Mr. Urbanik today in front of this honorable panel directly contradicts what he told the bankruptcy court on 9—on September 1, 2011. And that is at tab 2 in the little binders. Mr. Urbanik is talking to the court, and he says, and as a result of those meetings with the receiver, it was determined that Andova did own Mondial. The receiver owned the other ones, and both sides were comfortable with that. So, any claim that PetFinders is owned by the bankruptcy estate today in this court directly contradicts what Mr. Urbanik told the bankruptcy court. That's number one. Number two, there's no evidence— And what are the consequences of that, of what you just said? Does that mean that the entire sale is vitiated, or what are you saying? Well, I don't know why the consequences were that the receiver didn't appear in the bankruptcy court to challenge—on the PetFinders case, because the receiver was of the opinion that he owned the name. So why should he come there to challenge it? If I own it, why—the bankruptcy court can't sell it. And that's what Mr. Urbanik was telling the bankruptcy judge. That the receivership owned it, and it was beyond the reach of the bankruptcy court. Correct. Exactly. Exactly. And furthermore, there's no evidence in the record that a sale to Discovery Communications was ever consummated. It was raised for the first time in the appellee's brief in the district court. But there's no record evidence of a sale ever being consummated. And then the bankruptcy court applied the wrong standard for the finding of good faith. The bankruptcy court's standard was good faith at arm's length, and that's not the standard. The standard is, for good faith, is no notice of an adverse claim and that an asset sold for value. Now, did the bankruptcy court address the ownership of the domain as between the receivership and the bankruptcy estate? The bankruptcy court was under the impression that it was property of the estate and the sale could be approved. All right, but did anybody at that point, nobody objected at that point? PetFinders, LLC. There should be an objection. Did object, yes. PetFinders, LLC, objected. What did they say? They said that they have an interest in the property, and they made an adverse claim to the name PetFinders.com. Who did? PetFinders, LLC. And that was overruled after? Yes, Your Honor, that was overruled, yes. And? It was overruled, but was that ever the subject of further appeal? It was appealed to the district court, yes, it was. And appealed to us now? It is on appeal to you now, to this court now. And the district court made a determination that statutory mootness applies and dismissed the appeal. And the order dismissing the appeal is what is on appeal now. Statutory mootness, I mean under? 362. Under 363M. Under 363M. And we don't believe that that applies because of the holding in TMT, which is that you can't be a good faith purchaser of an asset if you've got notice of an adverse claim to the asset. And we also raised the issue of value, but that's the very, very small side issue that we raised in the briefs, that that discovery didn't pay value. If they paid anything at all, because there is no evidence in the record that they paid anything. So, and that's all I've got. Thank you very much, Your Honor. Okay, Mr. Shipp. Thank you. That concludes the arguments that we have on the oral argument.